**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DANIEL P. TABER,

Plaintiff

v.

EXEMPLAR HOLDINGS, LLC,

Defendant

Case No.: 2:23-cv-00670-APG-BNW

**Order Certifying Questions of Law to the Supreme Court of Nevada**

I respectfully certify to the Supreme Court of Nevada the following questions of law that are determinative as to part of a case before me and as to which there is no clearly controlling precedent in the decisions of the Supreme Court of Nevada or the Nevada Court of Appeals:

> Under the Nevada borrowing statute, Nevada Revised Statutes (NRS) § 11.020, where does a cause of action on an obligation against a limited liability company (LLC) arise? More specifically, does an LLC reside in its place of incorporation or principal place of business under the Nevada borrowing statute?

## I. STATEMENT OF ALL FACTS RELEVANT TO THE CERTIFIED QUESTION

Daniel P. Taber is a citizen of California and was so at all times during the events relevant to his claim. Exemplar Holdings is a limited liability company formed in Nevada. I have found that Exemplar Holdings' principal place of business at the relevant time was Kansas.

Taber was hired by Exemplar Holdings to produce a generic pedicle screw. ECF No. 25-2 at 2-3; ECF No. 31 at 7, 10. A pedicle screw is used in spinal fixation medical procedures. ECF No. 31 at 7. Taber's work on pedicle screws for Exemplar Holdings would come to be known as the "Screw Project."

Taber met with Exemplar Holdings' leadership at its office in Olathe, Kansas in July 2013 to set a budget for the Screw Project. ECF Nos. 25-6 at 4-5; 25-2 at 2-3. Initially, Taber's

monthly compensation rate was $10,000 a month. ECF No. 31 at 10.  A few months later, Taber orally agreed to reduce his monthly rate to $7,500 a month. ECF No. 25-6 at 13-14.  Exemplar Holdings did not pay Taber every month, however.  Instead, Taber alleges that his payment was due upon producing prototype pedicle screws ready for medical testing to be done prior to sale. ECF No. 31 at 11.  Taber was paid several times at inconsistent intervals, in what Taber alleges were "advancements" on his salary. ECF No. 1 at 10; ECF No. 31 at 54.

On April 29 2017, Exemplar Holdings' sole member and manager emailed Taber that he was "willing" to make four payments to Taber totaling $30,000 for the completion of the Screw Project. ECF No. 1 at 9.  Taber alleges he instead was owed nearly $250,000 for his work dating back to 2013. ECF No. 1 at 11.  In an email to an Exemplar Holdings employee a month later, Taber stated he interpreted the April 29 email from Exemplar Holdings' manager as "effectively terminat[ing] [his] at-will employment" because it was "seeking to re-negotiate [his] past compensation." ECF No. 31 at 59.  Taber further stated that his "monthly salary has stopped effective the end of April 2017" and attached an expense report and payment history listing what he was owed. *Id.* at 59-60.  The payment history stated that Exemplar still owed Taber $255,000 for his labor on the Screw Project from November 2013 through April 2017.  ECF No. 1 at 10-11.

## II. NATURE OF THE CONTROVERY IN WHICH THE QUESTION AROSE

Taber filed this suit on April 28, 2023, alleging breach of contract against Exemplar Holdings for his unpaid compensation.  His filing was almost six years from when Taber alleges his employment with Exemplar Holdings ended.  Exemplar Holdings moved for summary judgment on three grounds: (1) there is no instrument in writing between the parties, so Nevada's four-year statute of limitations applies to Taber's breach of contract claim; (2) Nevada's

borrowing statute, which imports the statute of limitations from another state, bars Taber's claim by importing Kansas' or California's statute of limitations; and (3) even if there is a written agreement such that Nevada's six-year statute of limitations applies, this is an installment contract, so Nevada's statute of limitations bars any payments due more than six years prior to Taber filing his complaint. Taber moved for partial summary judgment that the Nevada six-year statute of limitations governs because Nevada's borrowing statute does not apply in this case. I denied Exemplar Holdings summary judgment on its first issue because a reasonable jury could determine the parties' agreement was founded upon an instrument in writing.

The parties dispute whether the Nevada borrowing statute applies. That statute states:

> When a cause of action has arisen in another state, . . . and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

NRS § 11.020. Thus, a court applies another jurisdiction's statute of limitations if: (1) the cause of action arose in another jurisdiction; (2) the cause of action would be barred by that other jurisdiction's statute of limitations; and (3) the plaintiff was not a Nevada citizen at the time of filing the complaint. *Flowers v. Carville*, 310 F.3d 1118, 1125 (9th Cir. 2002) ("[Plaintiff] held her cause of action from the time it accrued, and she was a citizen of Nevada when she filed her complaint. The exemption to Nevada's borrowing statute requires no more."). Taber concedes that he is and was at all times a California citizen. Both Kansas' and California's statutes of limitations bar Taber's claim if they apply. Kan. Stat. Ann. §§ 60-511(1), 60-512(1); Cal. Civ. Proc. Code §§ 337(a), 339.

Under the Nevada borrowing statute, a cause of action on an obligation arises where the defendant resided when the obligation came due. *Lewis v. Hyams,* 63 P. 126, 127 (Nev. 1900);

*Wing v. Wiltsee*, 223 P. 334, 336 (Nev. 1924); *Alberding v. Brunzell*, 601 F.2d 474, 477 (9th Cir. 1979). Exemplar Holdings argues that, as an LLC, it resides in its principal place of business: Kansas. Taber argues that Exemplar Holdings resides in its state of formation: Nevada. No party alleges that Exemplar Holdings resided in California, so the Nevada borrowing statute would not apply California's statutes of limitations.

I could not find, nor did the parties cite to, any Nevada law that determined where an LLC resides for purposes of the Nevada borrowing statute. The Supreme Court of Nevada should decide the scope and applicability of Nevada's statutes of limitations and borrowing statute, because that decision will have important public policy implications. So I denied summary judgment to both parties as to the borrowing statute issue without prejudice to refiling, and I certify the question to the Supreme Court of Nevada. I also declined to rule on the installment contract issue and denied without prejudice Exemplar Holdings' summary judgment motion on the issue. If the Supreme Court of Nevada finds that an LLC resides at its principal place of business, such that Exemplar Holdings resides in Kansas, Kansas' 5-year statute of limitations would bar Taber from recovering any compensation, no matter if his employment agreement was an installment contract or not. Thus, ruling on whether Taber's employment agreement was an installment contract would be an advisory opinion at this time.

## III. NO CLEARLY CONTROLLING PRECEDENT IN NEVADA LAW

I have found no clearly controlling precedent on the certified questions. The Supreme Court of Nevada has established and reaffirmed that a cause of action for a contractual obligation under the Nevada borrowing statute arises where the defendant resided when the obligation came due. *Lewis*, 63 P. at 127; *Wing*, 223 P at 336. The Ninth Circuit rejected an opportunity to find that the Supreme Court of Nevada would overturn this rule. *Alberding*, 601 F.2d at 477-78. But

*Lewis*, *Wing*, and *Alberding* all dealt with defendants who were natural persons, not LLCs, and LLCs do not have a clear singular residence.

The reasoning behind *Lewis* and *Wing* likely narrows down an LLC's residence to one of two locations: its place of formation or its principal place of business. The Supreme Court of Nevada based its holding that a cause of action arises where a defendant resides on the notion that a defendant's residence was where "jurisdiction could be obtained over the defendant." *Wing*, 223 P. at 336 (citing *Lewis*, 63 P. 126). "[A]t the time [*Lewis* and *Wing*] were decided, personal jurisdiction could only be obtained in the state of residence." *Alberding*, F.2d at 477. For an LLC, two places form the paradigmatic basis for general jurisdiction over it: its place of formation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). Therefore, under the logic of *Lewis* and *Wing*, either place of formation or principal place of business is where an LLC resides under the Nevada borrowing statute.

Because place of formation and principal place of business are equally valid bases for general jurisdiction, the justification behind *Lewis'* and *Wing's* holdings does not provide a guide for choosing between them for where an LLC resides. *Daimler AG,* 571 U.S. at 137. The answer cannot be both. The Nevada borrowing statute necessitates that the defendant reside only in one jurisdiction, or else the statute would lead to the application of more than one statute of limitations. The first factor in determining whether the Nevada borrowing statute applies is if the "cause of action has arisen in another state." NRS § 11.020. The answer to that question would be both yes and no if Exemplar Holdings resides both in Nevada, its place of formation, and Kansas, its principal place of business. The Nevada borrowing statute would be impossible to apply in that scenario.

Other Supreme Court of Nevada cases provide some guidance for determining if an LLC resides in its place of formation or principal place of business. When deciding which Nevada county a Nevada-incorporated entity resides in for purposes of venue in state court, the Supreme Court of Nevada decided that a corporation's residence is "the principal office or place of business" as listed "in official documents on file" with the Nevada Secretary of State. *Flournoy v. McKinnon Ford Sales*, 520 P.2d 600, 601-02 (Nev. 1974).

The Supreme Court of Nevada later extended this holding for defining residency in another state statute. *Liberty Mutual v. Thomasson* considered where a foreign corporation with its headquarters in Massachusetts but with an office in Nevada resided under the statute establishing judicial review of state administrative proceedings, NRS § 233B.130. 317 P.3d 831, 835 (Nev. 2014). Applying *Flournoy's* reasoning, it decided that under NRS § 233B.130, "a corporation's place of residence is that which is listed as the principal place of business in its articles of incorporation." *Id*. at 836.

It is reasonable to predict that the Supreme Court of Nevada would apply *Flournoy* and *Liberty Mutual* to Nevada's borrowing statute and hold that a corporation's residence is its principal place of business listed in its filings with the Nevada Secretary of State.[1] It is further reasonable that the Supreme Court of Nevada would extend that holding to LLCs, because LLCs and corporations are treated identically for general jurisdiction, which is the basis for a cause of action arising where the defendant resides under the borrowing statute. *Impossible Foods Inc.*, 80 F.4th at 1086 (applying to an LLC the holding of *Daimler AG*, 571 U.S. 117, that "general

[1] No party has submitted Exemplar Holdings' filings with the Nevada Secretary of State. So it is unclear whether such filings, if they exist, identify a principal place of business here.

jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business"); *Lewis*, 63 P. at 127.

But it is also reasonable that the Supreme Court of Nevada would not extend *Flournoy* and *Liberty Mutual* to the Nevada borrowing statute. *Flournoy* was not deciding a corporation's residence between its place of incorporation and principal place of business, because both were in Nevada. 520 P.2d at 601. Instead, it was deciding in which Nevada county the corporation resided: the county where it does business or where its principal office is. *Id.* at 601-02. *Liberty Mutual* extended *Flournoy's* holding that a corporation's residence is its principal place of business to a corporation incorporated outside of Nevada. 317 P.3d at 835-36. But *Liberty Mutual* did not specifically find that the corporate party resided in the foreign state where its headquarters was located. *Id.* at 835. Instead, the Supreme Court of Nevada held that, because the corporate party was incorporated outside of Nevada, it did not have a fixed residence in any Nevada county. *Id.* at 836. This holding was borne of the fact that the *Liberty Mutual* court was deciding which Nevada county, if any, the corporate party resided in for the purposes of the applicable statute. *Id.* at 832. Because both cases attempt to answer which (if any) Nevada county a corporation resides in, not what state it resides in, they have limited application to the question of the state of corporate residency under the Nevada borrowing statute.

The policy behind the borrowing statute does not help me reach an answer in this case. When analyzing the Nevada borrowing statute, the Ninth Circuit noted that borrowing statutes were passed to preclude "citizens of states with shorter limitations periods to sue in states with longer periods." *Flowers*, 310 F.3d at 1123. This supports Exemplar Holdings' assertion that Taber, as a non-Nevada citizen, should not be able to apply Nevada's six-year statute of limitations to his claim. But the plaintiff's residency is only one element of the Nevada

borrowing statute. NRS § 11.020. When the cause of action arises in Nevada, the Nevada statute still applies despite an out-of-state plaintiff. *Id.* Therefore, the question of whether Nevada's borrowing statute applies here still turns on where Taber's cause of action arose: *i.e.*, where Exemplar Holdings resides.

Therefore, I certify the above questions regarding the Nevada borrowing statute to the Supreme Court of Nevada.

## IV. PARTIES NAMES AND DESIGNATION OF APPELLANT AND RESPONDENTS

Plaintiff: Daniel P. Taber

Defendant: Exemplar Holdings, LLC

Because both parties moved for summary judgment on the issue whether the Nevada borrowing statute applies to Taber's claim, it is not clear which one should be deemed the appellant. But because the plaintiff bears the burden of proof on his claims, I designate plaintiff Taber as the appellant and defendant Exemplar as the respondent.

## V. NAMES AND ADDRESSES OF COUNSEL FOR THE PARTIES

Plaintiff/appellant is appearing pro se. His address is:

Daniel P. Taber
556 South Indian Hill Blvd.
Claremont, CA 91711

Counsel for defendant/respondent:

Michael N. Feder
Dickinson Wright PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169

Gabriel A. Blumberg
Dickinson Wright PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169

**VI. CONCLUSION**

I THEREFORE ORDER the clerk of court to forward both this order and my order on Exemplar Holdings' objection (ECF No. 39) that is being filed simultaneously with this under official seal to the Supreme Court of the State of Nevada, 201 South Carson Street, Suite 201, Carson City, Nevada 89701-4702.

DATED this 2nd day of December, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE